# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION
# CIVIL ACTION NO. 1:23-CV-00043-HBB

**CHRISTINA K.**[1]                                               **PLAINTIFF**

**VS.**

**MARTIN O'MALLEY, COMMISSIONER**
**SOCIAL SECURITY**[2]                                        **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the Complaint (DN 1) of Christina K. ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 13) and Defendant (DN 16) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 9). By Order entered June 20, 2023 (DN 10), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

---

[1] Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.
[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted as the defendant in this suit.

FINDINGS OF FACT

On July 20, 2021, Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income (Tr. 98, 284-85, 286-89, 290-96). Plaintiff alleged that she became disabled on February 1, 2018, as a result of type 2 diabetes, bipolar disorder, anxiety, manic depression, high cholesterol, obesity, and back problems (Tr. 98, 141, 149, 158, 167, 368). The application was denied initially on September 4, 2021, and upon reconsideration on December 17, 2021 (Tr. 98, 139, 140, 157, 176).[3] On February 8, 2022, Plaintiff filed a written request for hearing (Tr. 98).

On October 25, 2022, Administrative Law Judge Aubri G. Masterson ("ALJ") conducted a telephonic hearing due to the extraordinary circumstances presented by the COVID-19 pandemic (Tr. 98, 119-20). Plaintiff and her counsel, Mary Burchett-Bower, participated telephonically (Id.). Brenda Joyce White, an impartial vocational expert, testified during the telephonic hearing (Id.).

In a decision dated November 15, 2022, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 98-109). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since February 1, 2018, the alleged onset date (Tr. 100). At the second step, the ALJ determined that Plaintiff has the following severe impairments: bipolar disorder; anxiety; attention deficit hyperactivity disorder ("ADHD") (Tr. 101). The ALJ also determined that Plaintiff has the following non-severe physical impairments: diabetes, hypertension, high

---

[3] The ALJ indicates the application was denied upon reconsideration on September 6, 2021 (Tr. 98). As the Disability Determination and Transmittal forms indicate September 4, 2021 (Tr. 139, 140), the undersigned has used that date.

cholesterol/hyperlipidemia, allergic rhinitis, GERD, insomnia, rosacea, obstructive sleep apnea, and restless leg syndrome (Tr. 101). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 102).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform full range of work at all exertional levels but with the following non-exertional limitations: she can perform simple, routine work and concentrate for two hour periods at one time; she can work in an object oriented work environment and work with objects rather than people; no production paced or quota driven work; no interaction with the general public; occasional interactions with coworkers and supervisors but no team or tandem tasks; and she can tolerate occasional workplace changes that are slow and gradually introduced (Tr. 103). Additionally, the ALJ determined that Plaintiff is unable to perform any past relevant work (Tr. 107).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 107-09). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from February 1, 2018, through the date of the decision, November 15, 2022 (Tr. 109).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 281-83). The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

3

CONCLUSIONS OF LAW

A.  Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Hum. Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.  Landsaw v. Sec'y of Health & Hum. Servs., 803 F.2d 211, 213 (6th Cir. 1986).  "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."  Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Hum. Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)).  In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."  Cohen v. Sec'y of Health & Hum. Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3).  At that point, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).  Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision.  42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton, 2 F.3d at 695-96.

B. The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" means:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A) (Title II); 42 U.S.C. § 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the RFC to return to his or her past relevant work?

> 5) Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

## C. Plaintiff's Challenges to Finding No. 5

Plaintiff contends that the ALJ's mental RFC determination is not supported by substantial evidence (DN 13 PageID # 2132-40). Plaintiff explains that the ALJ supports the mental RFC determination by finding the opinions of the State agency psychological consultants persuasive (Id. at PageID # 2133) (citing Tr. 106-07). Plaintiff asserts that the ALJ's rationale for finding the opinions persuasive is not supported by substantial evidence because the ALJ failed to consider that the State agency psychological consultants did not have the opportunity to review the evidence received at the hearing level (Id. at PageID # 2133-34). Specifically, Plaintiff is referring to the records concerning her psychiatric hospitalization at the University of Louisville's Peace Hospital from January 27 to 31, 2022 (Tr. 1448-1790), her psychiatric hospitalization at Western State Hospital from August 31 to September 1, 2022 (Tr. 1932-69), and the opinion that the treating psychiatrist, Dr. Huma Qadir, rendered on September 21, 2022 (Tr. 1271-76). Plaintiff accuses the ALJ of unfairly minimizing her need for the psychiatric hospitalizations and ignoring most of the evidence cited that document an abnormal metal status (Id. at PageID # 2134-39). Plaintiff also contends that the ALJ erred in finding Dr. Qadir's opinion not persuasive (Id. at PageID # 2139-40).

In response, Defendant argues that the ALJ's mental RFC determination is supported by substantial evidence in the record which includes the prior medical findings of the State agency psychological consultants, Dan Vandivier, Ph.D., and Clarissa Roan-Belle, Ph.D. (DN 16 PageID

# 2157). Defendant points out that "when the prior administrative medical findings of the State agency psychologists are supported by other facts in the record, they provide substantial evidence for the ALJ's RFC findings" (Id. at PageID # 2158) (citing Reeves v. Comm'r of Soc. Sec., 618 F. App'x 267, 274 (6th Cir. 2015)). Defendant explains that, while Drs. Vandivier and Roan-Belle did not have access to the entire record, the ALJ did have access to all the records and discussed them throughout the decision—including the evidence referenced by Plaintiff—as well as made decisions about which medical findings to credit, and which to reject, so the ALJ could develop her own mental RFC as supported by the evidence (Id. at PageID # 2159) (citing Tr. 98 - 109). Defendant observes that the ALJ's mental RFC findings have slightly greater limitations in social functioning that what Drs. Vandivier and Roan-Belle had opined (Id.). Further, Defendant asserts that the ALJ is not required to discuss all the evidence submitted, and the ALJ's failure to cite specific evidence does not mean that it was not considered (Id. at PageID # 2160-61) (citing Simons v. Barnhart, 114 F. App'x 727, 733 (6th Cir. 2004)). Defendant suggests that the Court should decline Plaintiff's invitation to reweigh the evidence (Id. at PageID # 2161). As to Dr. Qadir's opinion, Defendant contends that the ALJ found it "to be unpersuasive, noting that the limitations set forth were neither supported by Dr. Qadir's longitudinal examination findings nor consistent with the other evidence, including Plaintiff's relatively routine treatment and the mental status findings 'across multiple providers'" (Id. at PageID # 2162-64) (citing Tr. 106).

The residual functional capacity determination is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c). Administrative Law Judges make this finding based on a consideration of medical source statements, prior administrative

medical findings, and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c), 416.929, 416.945(a)(3), 416.946(c). Thus, in making the residual functional capacity determination Administrative Law Judges must necessarily evaluate the persuasiveness of the medical source statements and prior administrative medical findings in the record as well as assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a), 416.1520c, 416.1529(a).

The new regulations for evaluating medical opinions and prior administrative medical findings are applicable to Plaintiff's case because she filed her application after March 27, 2017 (Tr. 98, 284-85, 286-89, 290-96). *See* 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),"[4] in the record, even if it comes from a treating medical source. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[5] Instead, Administrative Law Judges will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b). The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).[6] Of these five factors, the two

---

[4] At the initial and reconsideration levels State agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings." 20 C.F.R. §§ 404.1513a(a)(1), 416.913a(a)(1). Administrative law judges "must consider" the administrative medical findings of non-examining state agency medical or psychological consultants according to the new regulation. 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

[5] The language quoted above indicates that the new regulation has done away with the controlling weight rule in 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2).

[6] In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. §§ 404.1520c(c)(3)(i)-(v), 416.920c(c)(3)(i)-(v).

most important are supportability and consistency. 20 C.F.R. §§ 404.1520c(a) and (b)(2), 416.920c(a) and (b)(2). Further, the regulation requires Administrative Law Judges to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Notably, under the regulations Administrative Law Judges "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The Court will discuss the relevant portions of the ALJ's decision and respond to Plaintiff's challenges. In the context of assessing Plaintiff's RFC, the ALJ provided a comprehensive summary of Plaintiff's testimony regarding the symptoms caused by her mental impairments and being hospitalized at least three or four times (Tr. 104). The ALJ indicated that after careful consideration of the evidence, Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms caused by her medically determinable impairments are not entirely consistent with the medical evidence and other evidence in the record for the reasons provided in the decision (Id.). The ALJ then discussed the medical evidence pertaining to Plaintiff's mental impairments:

> The record documents the claimant has been prescribed medication by a primary care provider and by a mental healthcare provider (psychiatrist or nurse practitioner). The claimant participated in formal mental health treatment seeing a therapist for several months in 2021 before being discharged for non-compliance (no show/contact) in July 2021. In June 2021, she was admitted for three days to the adult crisis stabilization unit reporting she was really tired, under a lot of stress, and had told her mother she would take a bottle of pills. She subsequently restarted treatment with a mental health provider. After a medication change in September 2021, the claimant reported she felt her medication was better than prior medications as to helping her focus and with mood swings and

depression. In January 2022, the claimant went to the ER reporting she wanted to commit suicide by overdose and was admitted for three days where she participated in medication management and individual and group therapy. The claimant was admitted in late August 2022 for around three days after seeking ER treatment reporting suicidal ideation following a breakup with her boyfriend. In treating notes from September 2022, the claimant admitted she had not been taking her medication as prescribed. In October 2022, the claimant began an intensive outpatient program that is to last eight weeks. (Ex. 3F-5F; Ex. 6F page 8-26, 29-54; Ex. 7F page 9-69, 72-75; Ex. 8F, 11F, 15F, 17F, 19F-23F, 25F-27F)

The overall objective evidence of record does not support the claimant's allegations regarding the severity of her symptoms and limitations throughout the period under consideration. Mental status exams with the mental health providers have generally described the claimant as cooperative with appropriate eye contact and behavior. Her appearance at times is unkempt but generally appropriate. Speech is normal. Mood varies (depressed, euthymic, or "other" when based on her self-reports of being down, sad, mourning) with varying affect (labile, flat/blunted). The claimant is oriented and has normal perception. Judgment and insight varies but is generally good/intact. The claimant has logical/linear thought processes and appropriate thought content. Memory is intact. Attention and concentration are fair. She has moderate fund of knowledge. Mental status exams from ER visits/admissions have noted restricted affect, limited insight, and poor judgment but adequate attention/concentration, intact memory, and average fund of knowledge, with immediate improvement with treatment. Despite the claimant's allegations in her therapy sessions regarding the severity of her symptoms, the mental status exams are largely within normal limits overall but for recent sessions in September/October 2022. (Ex. 4F page 9-10, 14-15, 19-20, 24-25, 32-33, 40-41, 46, 66-67; Ex. 5F page 12-13, 21, 23, 39-41; Ex. 8F page 8, 15, 22; Ex. 11F page 7, 11, 13, 17, 21, 25, 27, 32, 36, 40, 44, 48, 53; Ex. 15F, 19F; Ex. 21F page 19, 23, 27, 33; Ex. 25F page 11; Ex. 26F page 13; Ex. 27F) Mental status exams with medical providers describe the claimant as alert, oriented, and in no acute distress. She has pleasant and appropriate affect. She generally has normal mood. She has normal attention span and concentration. (Ex. 3F page 17, 34-35, 46-47, 52, 57, 73, 81, 89-90, 96-97, 104-105, 111-112, 117, 122-123, 146, 154, 161, 168, 172, 176, 180, 186, 192; Ex. 6F page 12, 15, 21, 25, 31, 43-44; Ex. 7F page 17-18, 23, 68) As to the nature and severity of the claimant's

> mental impairments, the notations in the treatment record concerning the claimant's mental impairments do not indicate that the psychological base symptoms would impose broader limitation than those assessed in the residual functional capacity above.

(Tr. 104-05).

After discussing Plaintiff's testimony and statements about the type and level of her activities, the ALJ found that Plaintiff's reported activities suggest she was not as limited as Plaintiff described during the hearing (Tr. 105-06). Next, the ALJ considered medical opinions and prior administrative medical findings in the record (Tr. 106-07). Specifically, the ALJ announced that the statement of Dr. Huma Qadir is not persuasive and then provided the following explanation:

> This statement offers degrees of limitation in various areas of basic mental related work activities. This statement finds the claimant is "seriously limited" or is "unable to meet competitive standards" in most of these areas and would miss more than four days per month. As support for these limits, the doctor cites increased depression and impulsivity that led to the claimant recently being hospitalized suggesting reliance on an exacerbation as opposed to longitudinal exam findings. Accordingly, the undesigned finds the statement is not well supported. The statement is also not consistent with the other evidence of record. While there are some isolated exacerbations, the record demonstrates treatment has been generally routine in nature (medication management and some therapy) with episodes of non-compliance. Overall, the mental status exams across multiple providers is not consistent with the extreme limits assessed. For these reasons, the statement is not persuasive. (Ex. 16F)

(Tr. 106). The ALJ explained how he considered the supportability and consistency factors in determining the persuasiveness of Dr. Qadir's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ found that the extreme limitations expressed by Dr. Qadir are not supported by the longitudinal exam findings. The ALJ explained that the signs and symptoms

cited by Dr. Qadir are instead associated with a recent isolated exacerbation that led to Plaintiff's brief hospitalization. The ALJ also found that Dr. Qadir's extreme limitations are not consistent with other previously discussed evidence that demonstrated, though there have been some isolated but brief exacerbations, Plaintiff's treatment has been generally routine in nature with episodes of non-compliance. After having reviewed the record, the Court concludes that the ALJ's persuasiveness finding comports with applicable law and is supported by substantial evidence in the record.

The ALJ announced that the mental assessment of the State agency psychological consultants is persuasive (Id.). The ALJ explained as follows:

> This assessment finds the claimant can understand and remember simple instructions; sustain attention, concentration, effort, and pace for those tasks for periods of two hours at a time; interact as needed with supervisors, coworkers, and peers at least once up to 1/3 of the time; and adapt adequately to situational conditions and changes in a routine work setting. Although the residual functional capacity herein reflects vocationally relevant terms and slightly greater limits (for example, no interaction with the public), the mental assessment is generally consistent with the limits found herein. The assessment is well supported by the findings cited by the psychological consultants including the treatment received and mental status exams. The assessment is consistent with the other evidence of record. Over the course of the period under consideration, the claimant's treatment consisted of routine office visits for medication management and periods where the claimant has sought formal treatment (such as counseling). There are several ER visits leading to very brief admissions (typically 72 hour holds) for reported suicidal thoughts typically related to relationship problems (ex-husband, boyfriend, parents). (Ex. 3A, 4A, 6A, 7A)

(Tr. 106-07). The above findings are supported by substantial evidence in the record and comport with the regulations which require the ALJ to explain how he considered the supportability and

consistency factors in determining the persuasiveness of the prior administrative medical findings. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

As is common in these cases, the administration received additional evidence after the State agency medical consultants reviewed the record and rendered their opinions. *See* Kelly v. Comm'r of Soc. Sec., 314 F. App'x 827, 831 (6th Cir. 2009). The ALJ specifically found that the opinions are consistent with all the evidence in the record—including the subsequently received medical Exhibits—that are discussed in detail, with pinpoint citations, in the preceding paragraphs of the decision. The ALJ did not inappropriately play doctor but instead weighed the evidence and gave Plaintiff the benefit of the doubt by deciding to impose slightly greater limits (for example, no interaction with the public). The Court notes that Plaintiff has not made a clear showing that the subsequently received evidence fatally undermines the accuracy of the prior administrative medical findings. Id. Moreover, the ALJ's additional limitations ultimately benefited Plaintiff and cannot constitute error.

Finally, Plaintiff accuses the ALJ failing to cite specific evidence located in certain medical exhibits. Review of the ALJ's decision reveals that she considered those medical exhibits and provided a comprehensive discussion of those records. In some instances, the ALJ discussed the objective observations of the treating source, rather than Plaintiff's subjective statements to that treating source. Although the ALJ is required to develop the record fully and fairly, which she has done in this case, the ALJ is not required to discuss all the evidence submitted, and her failure to cite the specific evidence identified by Plaintiff does not mean that the evidence was not considered. *See* Simons v. Barnhart, 114 F. App'x 727, 733 (6th Cir. 2004)).

The ALJ's mental RFC determination is supported by substantial evidence in the record and comports with applicable law. Consequently, Plaintiff is not entitled to relief on her challenges to Finding No. 5.

### D. Plaintiff's Additional Challenges

Plaintiff argues that Finding Nos. 10 and 11 are not supported by substantial evidence because they are based on a mental RFC finding that is not supported by substantial evidence (DN 13 PageID # 2141). As explained above, the ALJ's mental RFC finding is supported by substantial evidence and comports with applicable law. Therefore, Finding Nos. 10 and 11 are also supported by substantial evidence and Plaintiff is not entitled to relief on these claims.

### Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion . . ." Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004) (cleaned up). Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ. 42 U.S.C. § 405(g). Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law. Id. After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law. Therefore, Plaintiff is not entitled to relief with regard to her challenge.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

January 23, 2024

H. Brent Brennenstuhl
United States Magistrate Judge

Copies:		Counsel